# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEROME WILLIAMS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:08-CV-1881-RDP** |
| | } | |
| **CITY OF BIRMINGHAM, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

### MEMORANDUM OPINION

This case is before the court on Defendants' Initial Brief on Immunity Issues (Doc. #23), filed October 6, 2009.  To the extent that Defendants have requested relief, their request is due to be denied without prejudice.

**I.      STATEMENT OF FACTS**[1]

On October 10, 2006, Plaintiff Jerome Williams, an elderly and disabled individual, was standing in his front yard while his son, Vamizi Williams, and his son's friend, Toyo Washington, walked to the bus stop less than a block away.  (Compl. ¶¶ 13-15).  Around that time, Defendant Willis, a police officer, parked his cruiser near the bus stop.  (Compl. ¶ 16).  Plaintiff Williams then shouted to his son to return home and to "clean up house."  (Compl. ¶ 19).  Defendant Willis, who spotted Plaintiff Williams watching him, yelled, "What are you looking at?"  (Compl. ¶ 20).  Plaintiff Williams responded, "I ain't done nothing wrong."  (Compl. ¶ 21).

---

[1]The court accepts all well-pleaded facts in the Complaint as true and draws all inferences in Plaintiffs' favor. *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (applying this standard in the qualified immunity context).  These may not be the actual facts of this case, but the court must accept them as true only for purposes of this opinion.

Defendant Willis began walking toward Plaintiff Williams's home.  (Compl. ¶ 22).  Plaintiff Williams retreated to his porch and instructed Defendant Willis, "Don't come onto my porch." (Compl. ¶¶ 22-23).  To this, however, Defendant Willis replied, "I'll take your ass to jail."  (Compl. ¶ 24).  And without any further questioning or investigation, Defendant Willis entered the porch and informed Plaintiff Williams that he was under arrest for disorderly conduct.  (Compl. ¶ 25). Defendant Willis, after calling for backup, handcuffed Plaintiff Williams and maced him in the eyes. (Compl. ¶¶ 26-27).  Defendant Willis pushed Plaintiff Williams into his home's front door and, consequently, shattered the door's glass with Plaintiff Williams's head.  (Compl. ¶ 28).  Before and during the arrest, Plaintiff Williams "never fought or resisted [Defendant] Willis."  (Compl. ¶ 31).

At some point during this altercation, Plaintiff Williams began having a seizure.  (Compl. ¶ 29).  Thereafter, three additional officers, including Defendant Graham,[2] arrived and dragged Plaintiff Williams away from the broken door.  (Compl. ¶¶ 33-34).  Plaintiff Williams's seizure subsided but then returned, at which point the officers pushed him against glass windows that shattered as a result.  (Compl. ¶¶ 35-36).  Defendant Willis then attempted to drag Plaintiff Williams to his police cruiser, and Plaintiff Williams lost consciousness.  (Compl. ¶¶ 37-40).  Paramedics arrived and brought Plaintiff Williams to the hospital where he received treatment.  (Compl. ¶¶ 41-42).

Plaintiff Williams was charged with disorderly conduct and appeared at Municipal Court on three occasions to defend.  (Compl. ¶ 44).  Defendant Willis, although under subpoena, never appeared in court; accordingly, the charges against Plaintiff Williams were dismissed.  (Compl. ¶

---

[2]In the Complaint, Plaintiffs identified only Defendant Graham.  (Compl. ¶ 12).  The other responding officers are identified as "Jerry Doe" and "Joe Doe."  (Compl. ¶ 12).

2

44).  Thereafter, Plaintiff Williams, along with his wife, Plaintiff Laverne Gray, filed this lawsuit.

Plaintiffs allege the following causes of action:

> (1)     against Defendants Willis, Graham, and the other responding officers for the use of unconstitutionally excessive force during the course of the arrest (Compl. ¶¶ 54-62);
>
> (2)     against Defendant Willis for an unconstitutional arrest (Compl. ¶¶ 63-67);
>
> (3)     against Defendants Graham and the other responding officers for the failure to prevent excessive and unreasonable force during an arrest and failure to prevent an unlawful arrest (Compl. ¶¶ 68-73);
>
> (4)     against Defendant Willis for an unconstitutional enforcement of the disorderly conduct statute (Compl. ¶¶ 74-76);
>
> (5)     against Defendants Nunn[3] and City of Birmingham for ratification of the previously stated unconstitutional acts (Compl. ¶¶ 77-83, 96-99);
>
> (6)     against Defendant City of Birmingham for inadequate training that resulted in the previously stated constitutional violations (Compl. ¶¶ 84-90);
>
> (7)     against Defendants Nunn and City of Birmingham for maintaining a custom of permitting their police officers to violate individuals' constitutional rights as that which occurred in this case (Compl. ¶¶ 91-95);
>
> (8)     against Defendant Willis for assault and battery under state law (Compl. ¶¶ 100-03);
>
> (9)     against Defendant Willis for abuse of process and false imprisonment under state law (Compl. ¶¶ 104-07);
>
> (10)    against Defendants Nunn and City of Birmingham for *respondeat superior* liability under state law (Compl. ¶¶ 108-10);
>
> (11)    against Defendants Willis, Nunn, and City of Birmingham for loss of consortium (Compl. ¶¶ 111-13).

Based on these claims, Plaintiffs request compensatory and punitive damages as well as costs and

attorney's fees.  (Compl. ¶¶ 114-17).

---

[3]Defendant Nunn "was the Chief of Police of the City of Birmingham, Alabama at the time of the incidents described herein, and the supervisor or commanding officer of Defendant . . . Willis, and in that position and capacity, had the authority under state law and municipal practice of said city, to formulate and oversee policies, practices, and customs of the police department and for the hiring, screening, training, supervision and discipline of police officers of the department."  (Compl. ¶ 10).

## II.    PROCEDURAL HISTORY

The parties attempted privately to resolve the potential immunity issues in this case.  (Doc. #20).  Unable to resolve any of these matters, the parties requested that the court set a briefing schedule.  (Doc. #20).  The court required Defendants to submit their initial brief no later than October 1, 2009; Plaintiffs to submit their responsive brief no later than October 8, 2009; and Defendants to submit their reply brief no later than October 12, 2009.  (Doc. #21).  Defendants requested an extension of time, which the court granted.  (Order 10/01/09).  Accordingly, Defendants' initial brief was due no later than October 6, 2009; Plaintiffs' responsive brief was due no later than October 13, 2009; and Defendants' reply brief was due no later than October 16, 2009. (Order 10/01/09).  Plaintiffs then requested an extension of time, which the court granted.  (Order 10/13/09).  Based on that extension, Plaintiffs' responsive brief was due no later than October 19, 2009, and Defendants' reply was due no later than October 22, 2009.  (Order 10/13/09).  Plaintiffs filed their brief on October 19, 2009, and Defendants filed their reply on October 22, 2009.

In Defendants' initial submission, without filing a formal motion, they requested that the court "consider" their brief as a motion for summary judgment.  (Doc. #23 at 1).  As a basis for this request, they asserted that "there is no genuine issue of material fact," yet they offered no Rule 56 evidence in support of their analysis. (Doc. #23 at 1).  Indeed, only the Complaint and Answers were (and are) before the court.  In response, Plaintiffs suggested that the court construe the brief as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because the brief "contains numerous allegations of facts unsupported by the submission of any evidence" and "neither party has had the opportunity to offer evidence in this case."  (Doc. #25 at 1).  Defendants did not object to this suggestion.  (Doc. #27).  Given the posture of this case and the lack of a submitted evidentiary

record,[4] the court, therefore, concludes that the brief is best construed as a motion to dismiss rather than a motion for summary judgment.

## III.   DISCUSSION

### A.   Qualified Immunity

Defendant Willis asserts qualified immunity in response to Plaintiff Williams's federal claims against him.  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court mandated a two-step process for courts to follow in resolving qualified immunity claims.  "First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right.  Second, if the plaintiff satisfied the first step, the court had to determine whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Coffin v. Brandau*, 597 F.3d 1205, 1211 (11th Cir. 2010) (citations and internal quotation marks omitted).  In *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), the Supreme Court revisited this two-step process and concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs

---

[4]Despite having engaged in discovery, Defendants elected not to file a motion for summary judgment or any other dispositive motion.  Their brief, therefore, is the only affirmative request for relief before the court.

5

of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[5]

### 1.    Unconstitutional Arrest

Defendant Willis claims that he is entitled to qualified immunity as to Plaintiff Williams's unconstitutional arrest claim.  First, the court concludes that, based on the Complaint, Plaintiff Williams has identified a constitutional violation.  As a general matter, "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim.  The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a section 1983 action for false arrest."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990)).

To assess the presence of probable cause, "[a] familiar formulation holds that a 'law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, or is committing, or is about to commit an offense.'"  *Bailey v. Bd. of County Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1119-20 (11th Cir. 1992) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990)); *see also Stovall v. Allums*, No. 04-659, 2005 U.S. Dist. LEXIS 29146, at *41 (M.D. Ala. Aug. 16, 2005) ("Alabama's standard for the existence of probable cause is the same as the federal standard.").  "Absent probable cause, an officer is still entitled to qualified immunity if

---

[5]Importantly, Plaintiff Williams has sued Defendant Willis in his individual capacity and his official capacity as police officer for Defendant City of Birmingham.  Qualified immunity, however, insulates only against individual capacity lawsuits.  *See, e.g.*, *Bruce v. Beary*, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007) ("[A defendant], sued in his official capacity, is not, of course, entitled to . . . the individual capacity defense of qualified immunity.").  Accordingly, to the extent that Defendant Willis has suggested that qualified immunity applies to an official capacity lawsuit, that suggestion is without merit.

arguable probable cause existed." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quoting

*Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)).   "Arguable probable cause exists 'where

reasonable officers in the same circumstances and possessing the same knowledge as the Defendants

could have believed that probable cause existed to arrest."   *Lee*, 284 F.3d at 1195 (quoting

*Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001)).

In this case, Plaintiffs' Complaint alleges facts indicating that Defendant Willis acted without

actual or arguable probable cause.   Specifically, Defendant Willis arrested Plaintiff Williams for an

alleged violation of Alabama's disorderly conduct statute.   "Whether a particular set of facts gives

rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends,

of course, on the elements of the crime." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir.

2004).   Under Alabama law:

> A person commits the crime of disorderly conduct if, with intent to
> cause public inconvenience, annoyance or alarm, or recklessly
> creating a risk thereof, he:
> (1)   Engages in fighting or violent tumultuous or threatening
>         behavior; or
> (2)   Makes unreasonable noise; or
> (3)   In a public place uses abusive or obscene language or makes
>         an obscene gesture; or
> (4)   Without lawful authority, disturbs any lawful assembly or
>         meeting of persons; or
> (5)   Obstructs vehicular or pedestrian traffic, or a transportation
>         facility; or
> (6)   Congregates with other person in a public place and refuses
>         to comply with a lawful order of the police to disperse.

ALA. CODE § 13A-11-7 (2010).   Based on the allegations of the Complaint, however, Plaintiff

Williams did not actually or arguably engage in any of the conduct specified under Alabama law.

Instead, the only act that prompted the arrest was Plaintiff Williams's instruction to Defendant Willis

7

not to step onto his porch.  (Compl. ¶ 23).  At best, this conduct fits subdivision three, which concerns the use of "abusive or obscene language."  ALA. CODE § 13A-11-7(a)(3).  But under established Alabama law, these simple words, standing alone, are insufficient as a matter of law to justify an officer's belief that an individual has engaged in disorderly conduct.  *See, e.g.*, *L.M.A.W. v. Alabama*, 611 So. 2d 497, 498 (Ala. Crim. App. 1992) ("The 'abusive or obscene language' provision of the disorderly conduct statute 'is very narrow and applies only to 'fighting words.'"") (quoting *Mosley v. City of Auburn*, 428 So. 2d 165, 166 (Ala. Crim. App. 1982)).  On the facts of this case, the court cannot conclude that the statement "Don't come onto my porch" has "a likelihood of causing a violent response by the person to whom [it is] addressed."  *L.M.A.W.*, 611 So. 2d at 498; *see also id.* ("The statute requires that the words be calculated to cause an immediate breach of the peace.  It is not enough . . . they merely arouse anger and resentment.").  And to be sure, under established Alabama law, vulgar and obscene language, on its own and directed to a police officer, does not constitute a violation of the statute.  *H.N.P. v. Alabama*, 854 So. 2d 630, 632 (Ala. Crim. App. 2003) ("The fact that [a police] officer encounters . . . vulgarities with some frequency . . . means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to 'fighting words.'") (citation omitted).  Plaintiff Williams's simple instruction, directed to Defendant Willis and without any vulgarity or obscenity, is not "abusive or obscene" for purposes of Alabama's disorderly conduct statute.

Indeed, Defendant Willis's only argument in favor of qualified immunity is that "Plaintiff has failed to prove that [he] . . . violated clearly established statutory or constitutional rights of which a reasonable person would have known by arresting Williams based on probable cause."  (Doc. #23 at 11).  Aside from that cursory statement, which assumes that the court has before it a factual record,

Defendant Willis references neither supporting case law nor specific deficient allegations contained in the Complaint.  Because (1) the Complaint contains no indication that Defendant Willis had any basis whatsoever for arresting Plaintiff Williams, and (2) under established Alabama law, Plaintiff Williams's conduct falls woefully below the threshold for disorderly conduct, the court, at this juncture, cannot conclude that Defendant Willis is entitled to qualified immunity against the claim for unconstitutional arrest.  Therefore, the Complaint includes no allegations that establish either actual or arguable probable cause, and Defendant Willis is not entitled to qualified immunity on the facts as alleged.

### 2.    Unconstitutional Search

Defendants assert qualified immunity as to Defendant Willis's search of Plaintiff Williams. (Doc. #23 at 13-14).  The Complaint, however, does not contain a cause of action against Defendants for an unconstitutional search.  Defendants' purported claim to qualified immunity, therefore, is not properly before the court.

### 3.    Excessive Force

Defendant Willis asserts qualified immunity against Plaintiff Williams's excessive force claim.  (Doc. #23 at 15).  Specifically, Defendant Willis claims that "the dispositive inquiry is whether it would be clear to a reasonable officer that conduct such as that carried out by [him] in the seizure and arrest of Williams was unlawful under the circumstances with which he was presented. And, secondly, whether any reasonable officer confronted with a similar situation would be entitled to, under law, respond in a manner as did the defendant in this case."  (Doc. #23 at 15-16).  Based on the allegations of the Complaint, however, the court concludes that Defendant Willis is not presently entitled to qualified immunity.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005)). Excessive force is evaluated according to an "objective reasonableness" standard. *Graham*, 490 U.S. at 388. To determine whether force is objectively reasonable, the court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against 'the countervailing governmental interests at stake' under the facts of the particular case." *Oliver*, 586 F.3d at 905 (quoting *Graham*, 490 U.S. at 396). These considerations are measured against the so-called *Graham* factors: "the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Oliver*, 586 F.3d at 905 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002)). The force used must be "reasonably proportionate" to these factors. *Lee*, 284 F.3d at 1198.

First, regarding the use of mace, "[c]ourts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else." *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002). In this case, Plaintiff Williams (1) was being arrested for a minor infraction (*i.e.*, a Class C misdemeanor);[6] (2) surrendered willingly; (3) was

---

[6]Disorderly conduct constitutes a Class C misdemeanor, which is punishable by no more than three months imprisonment and/or a fine not exceeding $500. ALA. CODE §§ 13A-11-7(b); 13A-5-7(a)(3); 13A-5-12(a)(3). On that account, a Class C misdemeanor, more serious than only a violation, is the second-lowest criminal classification under Alabama law.

maced after having been handcuffed; (4) was not behaving violently; and (5) did not pose a threat

to Defendant Willis or anyone nearby.  In this regard, Defendant Willis's claim that a "reasonable

officer faced with the same situation would have believed the force . . . to have been necessary under

similar situations," (Doc. #23 at 17), is immaterial.  This Circuit's precedent, which establishes that

the specified use of force is excessive under these circumstances, determines the applicability of

qualified immunity.  A reasonable officer's objective belief is relevant only if the considered

constitutional violation is judicially novel.  *See, e.g.*, *Priester v. City of Riviera Beach, Fla.*, 208 F.3d

919, 926 (11th Cir. 2000) ("A narrow exception exists to the rule requiring particularized case law

to establish clearly the law in excessive force cases.  When an excessive force plaintiff shows that

the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that

the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case

law, the official is not entitled to the defense of qualified immunity.") (citations omitted).  Here,

however, the law is settled that using mace on a non-threatening, secured arrestee, who is suspected

of committing a minor infraction, is unconstitutionally excessive force.  Consideration of the

exception, therefore, is unnecessary.  *See Sherrod v. Sch. Bd. of Palm Beach County*, No. 07-80217,

2010 U.S. Dist. LEXIS 25753, at *67-68 (S.D. Fla. Mar. 18, 2010) ("The general touchstone for

determining qualified immunity is still fair notice, which is measured according to standards in

existence at the time of the challenged actions.") (citations omitted).  Accordingly, based on the

Complaint, Defendant Willis is not entitled to qualified immunity because (1) the use of mace

violated Plaintiff Williams's Fourth Amendment right against excessive force and (2) the Eleventh

Circuit's decision in *Vinyard* placed police officers on clear notice.

11

Second, regarding Defendant Willis slamming Plaintiff Williams into the glass door, the court concludes that Plaintiff Williams has stated a claim for a constitutional violation.  In *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002), the Eleventh Circuit considered whether slamming an arrestee's "head against the trunk after she was arrested and secured in handcuffs" constitutes excessive force.  Applying the *Graham* factors, the court held that "it is abundantly clear . . . that [the arresting officer] used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate . . . ."  *Id.*  Indeed, the court reasoned that the facts in *Lee* were "so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without case law on point."  *Id.* at 1199 (citation omitted).  The court crystallized its holding: "Slamming the head of a handcuffed, subdued arrestee against the trunk of a car is objectively unreasonable and clearly unlawful."  *Id.* at 1200.

Like the plaintiff in *Lee*, Plaintiff Williams had already been handcuffed, did not resist arrest, and posed no stated risk to Defendant Willis or anyone nearby.  (Compl. ¶¶ 27-31).  Based on the Complaint, therefore, Defendant Willis violated Plaintiff Williams's right against excessive force. And although the plaintiff in *Lee* was slammed against the hood of her trunk, as the Supreme Court has explained, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Here, slamming Plaintiff Williams's head into a glass door after having been secured is factually indistinguishable from slamming a subdued arrestee's head into the trunk of a car.  Both constitute the exercise of force grossly disproportionate to the arrestee's conduct.  Therefore, the court concludes that Defendant Willis is not entitled to qualified immunity, at least based on the Complaint, because (1) the conduct

12

was constitutionally excessive and (2) the Eleventh Circuit's decision in *Lee* placed police officers on notice that such conduct violates the Fourth Amendment.

Finally, Defendant Willis's only substantive argument is that Plaintiff Williams suffered merely *de minimis* injury. (Doc. #23 at 16). But the Eleventh Circuit has explicitly rejected this consideration when the use of force is objectively unreasonable: "[O]bjectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm." *Lee*, 284 F.3d at 1200. Thus, despite Defendant Willis's suggestion that Plaintiff Williams sustained moderate injury (which, in any event, is a claim unsupported by the Complaint's allegations), once the court concludes that the conduct is unreasonable under the Fourth Amendment, the severity of harm is analytically inconsequential.

### 4.    Subjective State of Mind

In an argument untethered to any specific claim, Defendants assert that "[t]here is no evidence that Officer Willis and Officer Graham acted maliciously, willfully, with ill will or in bad faith toward Williams." (Doc. #23 at 12). This assertion is irrelevant to the qualified immunity analysis. As the Eleventh Circuit has explained, "the government actor's intent and motivation are insignificant in determining entitlement to qualified immunity." *Crosby v. Paulk*, 187 F.3d 1339, 1344 (11th Cir. 1999) (citing *Flores v. Satz*, 137 F.3d 1275, 1277 n.4 (11th Cir. 1998)). Indeed, the court has specifically "rejected the inquiry into [an official's] state of mind in favor of a wholly objective standard . . . ." *Id.* Therefore, whether Defendants were motivated by malice or ill will counsels neither in favor of nor against a conclusion concerning qualified immunity. As explained above, based on the Complaint and an objective analysis thereof, Defendants are not necessarily entitled to qualified immunity.

13

**B.      Discretionary-Function Immunity**

Finally, Defendant City of Birmingham claims statutory immunity under Alabama Code §

6-5-338.  (Doc. #23 at 18).   Under this provision, police officers "shall have immunity from tort

liability arising out of [their] conduct in performance of any discretionary function within the line

and scope of [their] law enforcement duties."  ALA. CODE § 6-5-338(a).   Thus, Subsection (a)

immunizes police officers from tort liability when the described conditions are satisfied; additionally,

Subsection (b) extends the immunity to municipalities: "This section is intended to extend immunity

only to peace officers and governmental units or agencies authorized to appoint peace officers."

ALA. CODE § 6-5-338(b); *see also Ex parte City of Gadsden*, 781 So. 2d 936, 940 (Ala. 2003) ("The

plain language of § 6-5-338(b), Ala. Code 1975, extends that discretionary-function immunity to the

City.").  As an important caveat, however, "if the statute does not shield the officer, it does not shield

the city." *Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2003) (citing *Borders v. City of

Hunstville*, 875 So. 2d 1168, 1177 (Ala. 2003)).

First, the court observes that state law does not immunize Defendant City of Birmingham

from federal liability.  *See e.g.*, *Howlett v. Rose*, 496 U.S. 356, 383 (1990); *Palmer v. City of

Monticello*, 31 F.3d 1499, 1504 (10th Cir. 1994) ("Conduct by persons acting under color of state

law which is wrongful under 42 U.S.C. [§] 1983 . . . cannot be immunized by state law.   A

construction of the federal statute which permitted a state immunity defense to have controlling

effect would transmute a basic guarantee into an illusory promise . . . .") (quoting *Martinez v.

California*, 444 U.S. 277, 284 n.8 (1980)); *Bell v. Wolff*, 496 F.2d 1252, 1253 (8th Cir. 1974) ("[T]he

measure, scope, and application of asserted immunity under § 1983, arising, as it does, under a

federally created cause of action, cannot be restricted or enlarged by state laws concerning official

14

privilege or immunity."). Accordingly, insofar as Defendant City of Birmingham, resting on Alabama law, has requested "judgment as to all claims" (Doc. #23 at 18), state-created immunity is legally irrelevant to § 1983 liability. Instead, state-created immunity insulates Defendant City of Birmingham only against state-created causes of action.

Second, the court concludes that, based on the Complaint, Defendant City of Birmingham is not entitled to discretionary-function immunity as to Plaintiff Williams's cause of action for false imprisonment. Given the derivative nature of Alabama's statutory immunity, the dispositive issue is whether Defendant Willis is entitled to immunity pursuant to Alabama Code § 6-5-338(a). *See Howard*, 887 So. 2d at 211. Under Alabama law, a police officer is immune if the tort claim is "based upon [the officer's] . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to [§ 6-5-338(a)]." *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). But in *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179-80 (Ala. 2003), the Alabama Supreme Court explained that, in the absence of arguable probable cause, the police officer is not entitled to statutory immunity for an unlawful arrest. *See Mann v. Darden*, 630 F. Supp. 2d 1305, 1315 (M.D. Ala. 2009) ("Thus, if a reasonable officer could not have believed that he had probable cause to arrest, then there is no discretionary-function immunity."). As noted above, based on the Complaint, Defendant Willis did not have actual or arguable probable cause to arrest Plaintiff Williams. *See* discussion *supra* Part III.A.1. Accordingly, under Alabama law and again based solely on the allegations of the Complaint,

15

Defendant Willis is not entitled to discretionary-function immunity; correspondingly, Defendant City of Birmingham, immune only insofar as Defendant Willis, is similarly exposed to liability.[7]

## IV.    CONCLUSION

In sum, the court concludes that, based on the allegations contained in the Complaint, Defendants are not entitled to either qualified immunity or discretionary-function immunity. Their brief, to the extent that it contains a request for relief, is due to be denied without prejudice.[8]  A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

DONE and ORDERED this ____20th____ day of July, 2010.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7]Importantly, other state law claims are contained in the Complaint: assault, battery, and malicious prosecution. Defendant City of Birmingham has not specifically asserted state law immunity claims against these causes of action. Instead, its analysis of immunity focuses solely on the purportedly unlawful arrest. Thus, the court expresses no opinion whatsoever as to Defendant City of Birmingham's supposed entitlement to immunity insofar as the other state law claims are concerned.

[8]To be certain, the court's decision does not foreclose Defendants from later asserting their various theories of immunity. The conclusion reached here is narrow and wed only to the allegations contained in the Complaint. Whether the actual facts of this case, as presented at trial, warrant dismissal of individual-capacity claims on qualified immunity grounds remains an open question.